IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PBS LUMBER MANUFACTURING-CAMDEN, LLC                    PLAINTIFF

        v.            Civil No. 08-1078

FIRST SPECIALTY INSURANCE CORPORATION;
KEITH D. PETERSON & COMPANY, INC.; and
BB&T INSURANCE SERVICES, INC.                           DEFENDANTS


## O R D E R

Now on this 26th day of January, 2010, come on for consideration the following:

* **Separate Defendant, Keith D. Peterson & Co., Inc.'s Motion For Summary Judgment** (document #37);

* **First Specialty Insurance Corporation's Motion For Summary Judgment** (document #38);

* **First Specialty Insurance Corporation's Motion For Summary Judgment On The Cross-Claim Of BB&T Insurance Services, Inc.** (document #41);

* **Supplement Of Separate Defendant, Keith D. Peterson & Co., Inc. To Its Motion For Summary Judgment** (document #44); and

* **First Specialty Insurance Corporation's Motion To Strike** (document #73),

and from said motions, and the responses thereto, the Court finds and orders as follows:

1.  Plaintiff PBS Lumber Manufacturing-Camden, LLC ("PBS-Camden") seeks reformation of an insurance policy issued by

defendant First Specialty Insurance Corporation ("First Specialty"). It also seeks damages from First Specialty for breach of contract; damages from both First Specialty and defendant Keith D. Peterson & Co., Inc. ("KDP") for bad faith refusal to settle an insurance claim; and damages for negligence against defendant BB&T Insurance Services, Inc. ("BB&T") for failing to acquire insurance coverage as requested.

KDP and First Specialty now move for summary judgment on plaintiff's claims; First Specialty also moves for summary judgment in its favor on the crossclaim of BB&T. These motions are fully briefed and ripe for decision.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the

-2-

existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3.   Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

*   PBS Camden is an Arkansas limited liability company which owns and operates a lumber manufacturing facility in Camden, Arkansas.

*   PBS Lumber Manufacturing, LLC ("PBS Winnfield") is a Louisiana limited liability company, which carries on the same type of business in Louisiana.

*   Both PBS Camden and PBS Winnfield are owned by Freestone Sawmill Partners, LP.  PBS Winnfield does not have any ownership interest in PBS Camden.

*   Bob Schutte ("Schutte") was, at all relevant times, the chief executive officer of both PBS Camden and PBS Winnfield.

*   BB&T Insurance Services, Inc. ("BB&T") is an independent insurance agency retained by PBS Winnfield for obtaining insurance coverage for 2005 and 2006.

*   KDP is an insurance broker.

*   First Specialty is an insurance company.

*   In 2005, First Specialty issued an insurance policy that covered PBS Winnfield.  This policy, which expired June 30, 2006,

-3-

included a type of coverage known as Business Income and Extra Expense coverage ("BI & EE").

    *   PBS Winnfield again retained BB&T in 2006 to obtain renewed insurance coverage for PBS Winnfield.

    *   BB&T was also an agent for PBS Camden.  PBS Camden told BB&T that PBS Camden and PBS Winnfield were separate companies and needed separate insurance policies.

    *   PBS Winnfield submitted a renewal application to First Specialty for insurance coverage from July 1, 2006, through June 30, 2007.  A copy of the renewal application was submitted in connection with the pending motions, and no party challenges its authenticity.

    *   The renewal application indicated that PBS Winnfield had two locations, one in Winnfield, Louisiana, and one in Camden, Arkansas.  It requested, among other coverages, "blanket" BI & EE coverage of $2,000,000 for both locations.

    *   On June 29, 2006, BB&T requested KDP to bind coverage for the renewal application, and a binder was issued, effective July 1, 2006.  A copy of the binder was submitted in connection with the pending motions, and no party challenges its authenticity.  The binder indicated, on its first page, that $2,000,000 of BI & EE coverage was one of the coverages, and on a later page it indicated that coverage included "Blanket per location - Business Income and Extra Expense."  However, on the

Schedule of Locations, BI & EE was shown only for the Winnfield location.

* Subsequent to the issuance of the binder, insurance policy FCP126004502101 (the "Policy") was issued for the period July 1, 2006, through June 30, 2007. PBS Winnfield was the only named insured on the Policy. (No copy of the Policy has been provided to the Court in connection with the pending motions.)

* Sometime late on July 19, 2006, or early on July 20, 2006, a fire occurred at PBS Camden.

* On July 20, 2006, Tammie Cochran ("Cochran") of BB&T submitted a commercial policy change request to KDP. This change request seeks to add to the Policy BI & EE coverage with 100 percent coinsurance with agreed value for PBS Camden, effective July 1, 2006.

* Preston Herrington ("Herrington") of KDP decided to offer PBS Camden BI & EE coverage with 100 percent coinsurance, but declined to offer agreed value coverage.

* An explanation of coinsurance found at page 4 of First Specialty's brief (document #40) is apparently accepted by the parties, at least for purposes of the pending motions, and has been relied upon by the Court to aid its understanding of the issues. That explanation is as follows:

> Coinsurance is a risk-spreading mechanism that requires an insured to bear a portion of the risk for being underinsured. It is often expressed as the product of the total loss within a percentage of acceptable

-5-

variation and a fraction where the numerator is the amount of coverage actually carried on the property and the denominator is the actual value of the property, i.e. the amount of coverage that should have been carried.  The significance of the "agreed value" portion of the coverage is that it suspends the co-insurance penalty.  The parties effectively agree on the value of the property such that the amount of insurance carried is considered to be equal to the value of the property.

* A "1/3 coinsurance" provision refers to a 1/3 monthly limitation, which also waives any coinsurance penalty.

* Bernard Kurtzweil ("Kurtzweil") was the First Specialty program manager responsible for First Specialty's relationship with KDP.  On July 20, 2006, Lori Miles ("Miles") of KDP sent a referral to Kurtzweil asking him to approve Endorsement No. 002 to the Policy.  A copy of Endorsement No. 002 was submitted in connection with the pending motions, and no party challenges its authenticity.

* Endorsement No. 002 changes the Policy to read "THE POLICY IS AMENDED AS FOLLOWS:  AMENDING BI VALUES AT BOTH LOCATIONS AND CHANGING TO 100% COINSURANCE[.]  ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME[.]"  (Original in all caps.) On the Schedule of Locations attached to Endorsement No. 002, the BI & EE coverage for the Winnfield location has been reduced to $1,479,328, and BI & EE coverage for the Camden location has been added in the amount of $1,459,925.

* Endorsement No. 002 states "[t]his endorsement will not be used to decrease coverages, increase rates or deductibles or

-6-

alter any terms or conditions of coverage unless at the sole request of the insured."

*    When submitting the referral of Endorsement No. 002 to First Specialty, neither Herrington nor Miles advised Kurtzweil that a loss had already occurred at PBS Camden.

*    Kurtzweil approved Endorsement No. 002, not knowing of the loss at PBS Camden.

*    Following the fire at PSB Camden, First Specialty retained Greg Martin ("Martin") to work the claim.  Martin contacted Peter Hagen ("Hagen"), a certified public accountant, to provide assistance in calculating the loss under the BI & EE coverage.

*    On September 29, 2006, Hagen calculated that $128,696 was due under the BI & EE provision, and in September, 2006, First Specialty issued a check in that amount to PBS Winnfield and JP Morgan Chase Bank, N.A.

*    No representative of BB&T spoke to anyone at First Specialty prior to the loss at PBS Camden.

4.    KDP moves for summary judgment, contending that as an insurance broker, rather than an insurance company, it cannot -- as a matter of law -- be held liable for the tort of bad faith refusal to settle.  KDP relies on **Cincinnati Life Ins. Co. v. Mickles**, **85 Ark. App. 188, 200, 148 S.W.3d 768, 777 (Ark. App. 2004),** in which the court stated that "[b]ad faith requires the

establishment of affirmative misconduct by an insurer. . . ."

PBS Camden responds that KDP cites no cases which make liability for bad faith dependent on the legal status or relationship between the parties, and that there is no "cogent logical or policy reason to so narrowly construe Arkansas law." It cites **Aon Risk Services v. Mickles, 96 Ark. App. 369, 242 S.W.3d 286 (Ark. App. 2006)** for the proposition that each party is liable for its own deceitful actions.

**Aon** is inapposite, because it deals with liability for the torts of outrage and deceit, neither of which is pled as against KDP. The Complaint pled only that KDP owed PBS Camden a duty to act in good faith, to adjust its claim fairly and promptly, and to make a reasonable effort to settle that claim, and that it breached that duty. These allegations will not suffice to state a claim for outrage or deceit.

To evaluate PBS Camden's contention that Arkansas law cannot be construed so narrowly as to eliminate a claim for bad faith against KDP, the Court turns to **Preston v. Stoops, 373 Ark. 591, 285 S.W.3d 606 (Ark. 2008)**, where the Arkansas Supreme Court considered whether it should recognize a cause of action in contract for breach of the contractual duty of good faith and fair dealing. The court in **Preston** specifically noted the following language from **Country Corner Food & Drug, Inc. v. First State Bank, 332 Ark. 645, 655-56 966 S.W.2d 894, 899 (Ark. 1998)**:

-8-

The fact that every contract imposes an obligation to act in good faith does not create a cause of action for a violation of that obligation, and, as discussed above, this court has never recognized a cause of action for failure to act in good faith. Country Corner adduces no authority or argument for why this court should now recognize a new tort for failure to act in good faith or how such a recognition can be reconciled with our previous case law which only recognizes the tort of bad faith against insurance companies. Without a cogent reason supported by convincing authority for taking this step, we decline to recognize this new tort in Arkansas.

While **Preston** did not specifically reject the notion that a cause of action in contract might lie for breach of the duty of good faith, it also did not accept or adopt that notion. It also makes clear that the tort of bad faith lies only against insurance companies. The language of this passage indicates that the Arkansas courts do, in fact, narrowly construe the concept of bad faith so as to exclude the claim PBS Camden has pled as against KDP.

In this diversity case, the Court is bound to apply Arkansas law, or, if that law is uncertain, to predict how the Arkansas Courts would likely decide the issue based on analogous decisions. **Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 612 (8th Cir. 2009).** The Court predicts that under the circumstances of this case, Arkansas courts would find that PBS Camden has failed to state a viable cause of action against KDP. For that reason, KDP's motion is good, and will be granted. That being the case, the Court will not address the other arguments made by KDP.

5.  First Specialty moves for summary judgment as against

PBS Camden, contending that PBS Camden has no standing to assert bad faith because it is not a party to the Policy; it cannot present any evidence rising to the level of bad faith; reformation of the Policy is not appropriate because there is no evidence of mutual mistake; there can be no recovery for breach of contract without reformation; plaintiff cannot recover consequential damages; and plaintiff's claim for lost profits must fail because it is based on speculation.

(a)   The Standing Issue:

"An insurance policy is ordinarily a personal contract, upon which the insured alone is entitled to recover." **Insurance Co. of North America v. Nicholas, 259 Ark. 390, 392, 533 S.W.2d 204, 205 (Ark. 1976).**   Under Arkansas law,

> (a)  No contract of insurance or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured at the time of the effectuation of the insurance and at the time of the loss.
>
> (b)  "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

**A.C.A. § 23-79-104.**

It is undisputed that PBS Winnfield does not have any ownership interest in PBS Camden.

PBS Camden takes the position that it is a named insured on

-10-

the Policy, and as such has standing to assert its claims.  In
support of that position, it points out:

* that "PBS Lumber Manufacturing - Camden LLC" is
handwritten on a Schedule of Additional Interests dated June 26,
2006;

* that Michael McCoy of BB&T testified in deposition that
this handwritten notation was written where it was because "PBS
Lumber manufacturing-Camden, LLC is not an additional insured.  It
is a named insured, so it would not fall underneath this list of
schedule of additional interests in the area that you're speaking
of.  The proper place for it to be would be in the box up here
with the PBS Lumber Manufacturing, LLC to indicate that it is a
named insured."

* that First Specialty provided Schutte (CEO of PBS
Camden) with two Sworn Statements in Proof of Loss which it had
prepared for his signature in such a manner as to indicate that
PBS Camden was insured under the Policy;

* that First Specialty made payments in respect of the
loss to PBS Camden under the Policy; and

* that it is not common in the insurance industry to put
coverage for a loss in place after the loss.

In light of the foregoing circumstances, the Court believes
that PBS Camden has made out a jury issue as to whether it is a
named insured on the Policy.

-11-

(b)   The Bad Faith Issue:

The elements and application of the tort of bad faith refusal to settle an insurance claim under Arkansas law have been recently summarized as follows:

> The supreme court has defined "bad faith" as dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured, carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge.  The tort of bad faith does not, however, arise from a mere denial of a claim;  there must be affirmative misconduct.  Mere negligence or bad judgment is insufficient so long as the insurer is otherwise acting in good faith.

> The supreme court has held that nightmarish red tape, an abrupt attitude of an insurance representative about higher premium costs following cancellation, and confusion over the referral process did not amount to bad faith.  In another case, an insurance company's delay of three months to investigate a claim did not rise to the level of bad faith.  The supreme court also found no substantial evidence of bad faith when, among other things, the insurance company refused to pay for certain items because they had been discarded after an adjuster told the insureds that it was permissible to discard them.

> On the other hand, the supreme court has found bad faith where an insurance agent lied to the insured in stating that there was no coverage.  Bad faith was also found where a claims representative engaged in aggressive, abusive, and coercive conduct, which included the conversion of the insured's vehicle.  A carrier's intentional alteration of insurance records to avoid a bad risk also amounted to bad faith. . . .

**Watkins v. Southern Farm Bureau Casualty Ins. Co.**, --- S.W.3d ---, **2009 WL 3400697 (Ark. App. 2009)** (internal citations omitted).

PBS Camden argues that there is evidence to show that KDP and First Specialty "dishonestly tried to limit" the BI & EE coverage

-12-

to PBS Winnfield in the context of adjusting the loss at PBS Camden.  Since the case law does not dictate that such conduct cannot, as a matter of law, amount to bad faith, the Court concludes that PBS Camden has made out a jury issue on the matter.

(c)  Reformation based on mutual mistake:

First Specialty contends that reformation is not an appropriate remedy under the facts of this case.

Under Arkansas law, courts "may grant relief for a mutual mistake in the writing of an insurance contract that results in the written terms not expressing the clear intent and understanding of the parties."  **Mikus v. Mikus**, **64 Ark. App. 231, 237-38, 981 S.W.2d 535, 539 (Ark. App. 1998)**.  First Specialty contends there was no such mutual mistake here.

As explained in **Mikus**,

[a] mutual mistake is one that is reciprocal and common to the parties, each alike laboring under the same misconception in respect to the terms of the written instrument.  It is a mistake shared by the parties to the instrument at the time of reducing the instrument to writing.  It need not be the mistake of one of the parties to the written instrument.  It is only required that the writing fails to reflect the parties' true understanding.  Evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another thing.

**64 Ark. App. at 236-37, 981 S.W.2d at 538-39.**

Evidence that a mutual mistake occurred must be clear and convincing.  **Turner v. Pennington**, **7 Ark. App. 205, 206, 646**

-13-

S.W.2d 28, 29 (Ark. App. 1983).

The Court believes that a jury issue exists with regard to whether the Policy should be reformed to include PBS Camden as a named insured on the basis of mutual mistake. There is evidence from which a jury might well find that both PBS Camden and First Specialty agreed that First Specialty would insure PBS Camden and that the Policy was the means all intended for doing so. Those possible findings, however, are not the real focus of the mutual mistake argument. As aptly stated by PBS Camden in response to Interrogatories from KDP, "there does not appear to be any dispute over the existence of the coverage, only the terms."

PBS Camden argues that all parties "anticipated that the Camden facility would have BI/EE coverage," and that First Specialty is bound by the actions of KDP -- its agent -- which demonstrate mutual mistake.

PBS Camden seeks reformation that would include BI & EE with 100 percent coinsurance and agreed value -- while First Specialty denies that agreed value should be a part of the terms. The significance of the agreed value term is that it suspends the coinsurance penalty.

The parties also devote some attention to a formulation of the BI & EE coverage known as "1/3 co-insurance." It is undisputed that this provision also waives any coinsurance penalty.

The Court has not attempted to delve into the intricacies by

-14-

which these formulae are computed, but has examined the documents put forward by the parties to see if they create any genuine dispute as to whether there was a mutual misunderstanding about the inclusion of either a 1/3 coinsurance term or an agreed value term in connection with BI & EE coverage for PBS Camden.  Those documents and their relevant provisions are as follows:

\*    KDP prepared a proposal for the insurance it hoped to broker for PBS Winnfield, which indicated that the coverage would include "Blanket per location - Business Income and Extra Expense," and that valuation included "1/3 Monthly Limitation - Business Income and Extra Expense."  The attached Schedule of Locations showed BI & EE for the Winnfield location in the sum of $2,000,000, but did not show this coverage for the Camden location.

\*    The binder issued July 1, 2006, showed that coverage included "Blanket per location - Business Income and Extra Expense," and that valuation included "1/3 Monthly Limitation - Business Income and Extra Expense."  The attached Schedule of Locations showed this coverage for the Winnfield location, but not for the Camden location.

\*    PBS Camden submitted a Statement of Business Interruption in connection with the Policy, which was received by Miles of KDP along with a similar worksheet from PBS Winnfield on July 13, 2006.

* Endorsement No. 002 "amended BI values at both locations" and "chang[ed] to 100% coinsurance." This document shows BI & EE coverage at the Winnfield location in the sum of $1,479,328 and at the Camden location in the sum of $1,459,925. These sums are consistent with the figures on the Statement of Business Interruption worksheets submitted on July 13, 2006. There is no mention of agreed value or 1/3 monthly limitation.

* Lee Edward Howell ("Howell") of BB&T testified that he had a phone conversation with Herrington of KDP on July 20, 2006, and that Herrington acknowledged that BI & EE coverage was supposed to have been put in place for PBS Camden, and asked Howell to submit an endorsement request to get it added.

* Howell testified that "the whole nature of signed business income worksheets is to waive or suspend the coinsurance clause by adding an agreed amount endorsement, and it's the cheapest way to buy the broadest coverage available for business income coverage." Howell testified that he had never, before the events in suit, "submitted signed business income worksheets to an insurance company, broker, or anyone else and not been accepted and endorsed accordingly."

The Court finds the foregoing evidence sufficient to justify submitting to a jury the question of whether the Policy failed to include BI & EE coverage with either an agreed value term or a 1/3 monthly limitation term for PBS Camden as the result of a mutual

-16-

mistake.

(d)  Reformation based on unilateral mistake coupled with fraud:

PBS Camden also contends that reformation is justified based on unilateral mistake coupled with fraud on the part of KDP and First Specialty. It argues that KDP "baited" BB&T into submitting a coverage change request the morning after the fire, then used that change request to lower BI & EE coverages for both PBS Camden and PBS Winnfield, thus justifying reformation.

It is true that where unilateral mistake/fraud is pled and proven, reformation of a written instrument affected thereby is an appropriate remedy, but it is also true, as pointed out by First Specialty, that such was not pled in this case.  The Complaint specifically seeks reformation only on the basis of mutual mistake, and an alternate theory cannot now be relied upon to resist summary judgment.  See **Sorenson v. First Wisconsin National Bank of Milwaukee, N.A.**, **931 F.2d 19 (8th Cir. 1991)**.  The requirement of timely pleading is especially important when one considers that fraud must be pled with particularity.  To allow PBS Camden to proceed on a fraud theory which it has not pled would offend **F.R.C.P. 9**, which requires circumstances constituting fraud to be plead with particularity.  The Court will not, therefore, consider PBS Camden's fraud/unilateral mistake argument.

-17-

(e)  Consequential damages:

First Specialty contends for partial summary judgment, arguing that PBS Camden cannot recover consequential damages under an insurance policy.  PBS Camden does not address this argument, and the Court finds it persuasive.  Accordingly, First Specialty's motion for summary judgment on this contention should be granted.

(f)  Speculative damages:

Finally, First Specialty contends that it is entitled to partial summary judgment since PBS Camden cannot recover for lost profits because they are based on speculation.  The Court need not expend much time addressing this argument.  To the extent that any such recovery would be based on speculation, it is axiomatic that it would not be allowable.  The Court need not, at this point in the case, determine whether PBS Camden's proof as to any particular element of damages is based only on speculation.

For the foregoing reasons, the Court finds that First Specialty's motion for summary judgment on the claims of PBS Camden should be granted with respect to the issue of consequential damages, and denied in all other respects.

6.  First Specialty also moves for summary judgment in its favor on the crossclaim of BB&T against it, contending that as a matter of law it cannot be a joint tortfeasor with BB&T.

BB&T's crossclaim alleges that First Specialty and KDP were responsible for procuring insurance in this matter, and owed PBS

-18-

Camden and BB&T the duty to use reasonable skill, care, and diligence in doing so.  It further alleges that they failed to provide the requested insurance, or to notify BB&T that they could not provide it, and that to the extent PBS Camden recovers against BB&T, BB&T is entitled to recovery over against First Specialty and KDP.

First Specialty contends that if the Court grants its motion for summary judgment on PBS Camden's bad faith claim (the only tort pled as against it), it cannot be a joint tortfeasor with BB&T.  This argument is moot, given that the Court is not granting First Specialty's motion for summary judgment on the bad faith claim.

First Specialty also contends that it cannot be required to contribute to any recovery PBS Camden might make as against BB&T, because BB&T's claim is predicated on the alleged failure of First Specialty and KDP to provide the requested insurance.  It contends that if the jury finds that PBS Camden has the requested coverage, then it could not find BB&T negligent, and if it finds that BB&T was negligent in failing to procure the coverage, then it cannot find that First Specialty acted in bad faith in refusing to settle PBS Camden's claim.

Under Arkansas law, "'joint tortfeasors' means two (2) ormore persons jointly or severally liable in tort for the same injury to person or property. . . ." **A.C.A. § 16-61-201.**  First Specialty's

-19-

contention is essentially that the torts pled as against it and BB&T are mutually exclusive.  The Court finds this argument persuasive, and will, therefore, grant First Specialty's motion for summary judgment on the claims of BB&T.

7.   Finally, the Court will deny **First Specialty Insurance Corporation's Motion To Strike** (document #73).  While it has not proved of consequence to the decisions made herein, the Court has read and considered plaintiff's supplemental brief (document #72).

**IT IS THEREFORE ORDERED** that **Separate Defendant, Keith D. Peterson & Co., Inc.'s Motion For Summary Judgment** (document #37) is **granted**, and plaintiff's claims against Keith D. Peterson & Co., Inc., are **dismissed with prejudice.**

**IT IS FURTHER ORDERED** that **First Specialty Insurance Corporation's Motion For Summary Judgment** (document #38) is **granted in part and denied in part.**  The motion is **granted** insofar as it seeks summary judgment on PBS Camden's claim for consequential damages, and **denied** in all other respects.

**IT IS FURTHER ORDERED** that **First Specialty Insurance Corporation's Motion For Summary Judgment On The Cross-Claim Of BB&T Insurance Services, Inc.** (document #41) is **granted,** and BB&Ts claims against First Specialty Insurance Corporation are **dismissed with prejudice.**

**IT IS FURTHER ORDERED** that **First Specialty Insurance**

-20-

Corporation's Motion To Strike (document #73) is denied.

IT IS SO ORDERED.

/s/ Jimm Larry Hendren
JIMM LARRY HENDREN
UNITED STATES DISTRICT COURT

-21-